[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 8, 2006
THOMAS  K. KAHN
CLERK

_____

No. 04-14609

_____

D. C. Docket No. 01-08393-CV-UUB

MARIO MARTINEZ,

Plaintiff-Appellant,
Cross-Appellee,

versus

BRINK'S, INCORPORATED,

Defendant-Appellee,
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 8, 2006)**

Before EDMONDSON, Chief Judge, BARKETT, Circuit Judge, and HUNT[*],
District Judge.

PER CURIAM:

_____

[*]Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

Appellant Mario Martinez appeals the district court's grant of judgment as a matter of law to Brinks, Inc. following an $8,261,050.00 jury verdict[1] for Martinez on his suit for malicious prosecution against Brinks. Martinez was a former Brinks employee who was prosecuted for the theft of a Brinks bag containing $350,000 in cash and claimed in his lawsuit that Brinks and its agents maliciously induced the state to prosecute.

To prevail on a claim for malicious prosecution, a plaintiff must prove that: (1) an original criminal proceeding against him was commenced or continued; (2) the present defendant was the legal cause of that original proceeding; (3) there was a bone fide termination of the original proceeding in his favor; (4) there was an absence of probable cause for the original proceeding; (5) the present defendant acted with malice; and (6) he suffered damages as a result of the original proceeding. Alamo Rent-A-Car v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994). "The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution." Id.

There is no dispute that Martinez established three of the requisite elements of his cause of action: he was prosecuted and acquitted in the original criminal proceeding and suffered damages as a result of the prosecution. The question on

---

[1]More precisely, the jury's verdict awarded Martinez $4,261,050.00 in compensatory damages plus $4,000,000.00 in punitive damages.

appeal is whether Martinez presented sufficient evidence regarding the three remaining elements of the cause of action: (i) whether Brinks was the legal cause of that original proceeding; (ii) whether there was an absence of probable cause for the original proceeding; and (iii) whether Brinks acted with malice.

Initially, the district court granted summary judgment to Brinks on the grounds that Martinez could not establish that Brinks was the legal cause of the state's decision to prosecute him. Based upon the record at that stage of the proceedings, we reversed the grant of summary judgment, holding that genuine issues of material fact remained as to the role that Brinks employees played in instigating the criminal proceeding against Martinez. We expressly limited our review to the issue of whether Brinks was the legal cause of the criminal proceeding and made explicit that this court offered no opinion as to Martinez's ability to survive summary judgment or otherwise prove the other necessary elements of his claim.

Upon remand, Martinez's malicious prosecution claim proceeded to trial and a jury returned a verdict in Martinez's favor, awarding him $8,261,050.00 in damages. After the jury verdict, the district court granted judgment as a matter of law to Brinks because it found, upon further consideration, that Martinez had not presented sufficient evidence to support three necessary elements of the malicious

3

prosecution claim: (i) causation (i.e. evidence that Brinks' agents *caused* the authorities to prosecute Martinez); (ii) malice (i.e evidence that Brinks' agents sought to have Martinez prosecuted solely for the purpose of injuring him); and (iii) a lack of probable cause for the original criminal proceeding against Martinez.[2]

On appeal, Martinez essentially argues that there was sufficient evidence as to each of the requisite elements of his cause of action to support the jury's verdict. Brinks cross-appeals, arguing that the district court erred in permitting Martinez to argue an adverse evidence-spoliation inference to the jury.[3]

## DISCUSSION

We review de novo a district court's grant of judgment as a matter of law. Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1278 (11th Cir. 2005). In so doing, we review all record evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor. Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1177 (11th Cir. 2005). We will

---

[2] In the alternative, the district court held that a new trial was required because of additional errors during jury selection and at trial and because the jury's award was so high as to "shock the conscience" of the court.

[3] This issue derives from the fact that Brinks did not produce the surveillance videotape on which the authorities largely based their decision to prosecute Martinez. Brinks presented evidence that the tape was stolen during a burglary of Brinks' counsel's office. Martinez was permitted to argue that the missing tape could be considered as an adverse inference against Brinks if the jury found that Brinks failed to produce it in bad faith. We need not reach the issue on cross-appeal of whether spoliation was properly presented to the jury, because we find that the district court properly granted judgment as a matter of law.

4

affirm the district court's grant of judgment where the nonmoving party presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action. Fed. R. Civ. P. 50(a)(1); see also, Collado v. United Parcel Serv. Co., 419 F.3d 1143, 1149 (11th Cir. 2005).

Martinez first argues that this Court's prior opinion in this case, which reversed the district court's grant of summary judgment after concluding that material issues of fact remained requires that we reinstate the jury's verdict under the "law of the case" doctrine. This doctrine establishes that an appellate court's findings of fact and conclusions of law are generally binding in all subsequent proceedings in the same case both in the trial court and on a later appeal. Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 169 (11th Cir. 1994). We reject this argument because the law of the case doctrine does not apply to issues that were not actually decided, either explicitly or implicitly. Luckey v. Miller, 929 F.2d 618, 621 (11th Cir. 1991). This Court's prior opinion reached only the causation element of Martinez's malicious prosecution claim and expressly stated that it offered "no opinion with respect to the plaintiff's ability to prove [the remaining elements of the malicious prosecution cause of action] or survive summary judgment in that regard." Martinez v. Brinks, Inc., No. 02-12275 (11th

Cir., Sept. 18, 2002, slip op. at 6).[4] Thus, the law of the case doctrine has no bearing on the district court's conclusion that there was insufficient evidence at trial to permit a reasonable jury to find for Martinez on the element of probable cause.

To support his claim that Brinks was the "legal cause" of the original criminal prosecution, Martinez primarily relies on the testimony of Nick Porter, a former Brinks employee who assisted in the investigation of the theft. The theft was discovered on the morning of December 10, 1996, when a bag containing $350,000 in cash was missing from a delivery that Martinez made to Brinks' West Palm Beach location. Porter explained that after an internal investigation failed to pinpoint the source of the loss, Brinks officials contacted the West Palm Beach Sheriff's Office. Detectives Eric Reid and James Murphy then came to the Brinks facility, where Brinks' regional security manager, Dennis Romano ("Romano"), showed them the portions of the video surveillance tapes that covered Martinez's delivery of the bag. Porter operated the video equipment, and testified that he ran the surveillance tape numerous times.

Martinez relies on two specific statements made by Porter to support his

_____

[4] Moreover, the summary judgment record included testimony which was ultimately not admitted at trial. The summary judgment record also did not include testimony from the assistant state attorney who led the prosecution of Martinez concerning her evaluation of the strength of the state's case against Martinez.

6

argument that Brinks was the legal cause of the criminal prosecution against him.

First, at one point when Romano asked Porter to stop the tape, Romano pointed out a portion of the tape on which Romano saw the now-missing bag of cash disappear. According to Porter, Romano told the detectives that in this portion of the tape he could "see the messenger take the bag and slide it back to himself." Second, Porter told the jury that Romano told him that the missing bag "was going to be a West Palm Beach loss." During his testimony, however, Porter also stated that he did not recall Romano "pointing his finger at Martinez", nor did Romano ever say that he saw Martinez taking the now-missing bag of cash. The two investigating detectives both testified that *they* – and not Romano – first identified the portion of the tape in which Martinez "snatched back" the now-missing bag when the person who was checking it in had momentarily turned around. According to the detectives, they pointed this footage out to the Brinks employees. The detectives testified that they believed that the tape provided "obviously overwhelmingly compelling" evidence of Martinez's involvement, and gave probable cause for his arrest.

Porter[5] and the detectives all unequivocally testified that each person independently evaluated the video footage and drew their own conclusions

---

[5]Specifically, Porter testified that "[e]verybody came up with their own opinion" from watching the tapes. R 270 at 168-69.

therefrom. Furthermore, Assistant State Attorney Lanna Belohlavek ("Belohlavek"), who prosecuted the criminal case against Martinez, told the jury that the video surveillance footage, along with the statements made by Martinez and other witnesses, provided probable cause to prosecute. Belohlavek testified that she independently determined that she could prove his guilt for the theft beyond a reasonable doubt, without any influence from Brinks or its agents.

Although we agree with the trial judge that the two statements relied upon by Martinez are insufficient to carry the weight of a finding that Brinks was the legal cause of the prosecution against Martinez, the district court's decision must, in any case, be affirmed because Martinez cannot establish a lack of probable cause for the original state prosecution. As noted earlier, Martinez must show, as a necessary element of his malicious prosecution claim, that there was no probable cause for the original criminal proceeding. Alamo Rent-A-Car, 632 So. 2d at 1355. To shoulder the "onerous burden" of demonstrating an absence of probable cause, the plaintiff must show that the original criminal proceeding was initiated "without a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." Burns v. GCC Beverages, Inc., 502 So. 2d 1217, 1219 (Fla. 1986). Under this standard, one need not be certain of

8

the outcome of the criminal proceeding to have probable cause for initiating it.

Goldstein v. Sabella, 88 So. 2d 910. 911 (Fla. 1956).  Moreover, while probable

cause is a matter for the jury where the facts are in dispute, probable cause is

purely a matter of law for the court where the material facts are undisputed.

Endacott v. Int'l Hospitality, Inc., 910 So. 2d 915, 922 (Fla. Dist. Ct. App. 2005);

Beizer v. Judge, 743 So. 2d 134, 137 (Fla. Dist. Ct. App. 1999).

We agree with the district court that there was insufficient record evidence

from which a jury could reasonably conclude that there was no probable cause for

the original criminal proceeding.  The police detectives testified that based upon

the surveillance tape footage and witness statements (which revealed that Martinez

had violated several company procedures on the day in question), they had

probable cause to arrest and prosecute Martinez.  Furthermore, the state attorney

responsible for the prosecution provided uncontradicted testimony that she

independently concluded that there was sufficient evidence for a jury to find

Martinez guilty beyond a reasonable doubt.  See Dorf v. Usher, 514 So. 2d 68, 69

(Fla. Dist. Ct. App. 1987) (upholding district court ruling that malicious

prosecution plaintiff could not establish probable cause where state attorney made

independent decision to prosecute without interference by defendant).[6]

_____

[6]In diversity cases we must adhere to the decisions of the Florida appellate courts absent
some persuasive indication that the Florida Supreme Court would decide the issue otherwise.

Moreover, although the trial testimony may have created factual disputes concerning the exact role that Romano played in showing the surveillance footage to the detectives, these disputes did not create a jury question because they were not material to the probable cause determination. See Endacott, 910 So. 2d at 922; Beizer, 743 So. 2d at 137. Specifically, while Martinez argues that the jury could have reasonably found an absence of probable cause based on his own testimony that he was innocent, Florida courts have already rejected this argument. Sussman v. Daytona Beach, 462 So. 2d 595, 596 (Fla. Dist. Ct. App. 1985) (holding, in malicious prosecution suit, that plaintiff's own testimony that he was innocent did not create jury question on probable cause, as plaintiff's testimony did not concern "whether or not the factual information reasonably relied upon by the police officers provided them probable cause"). Furthermore, Martinez cannot rely on testimony in which Brinks employees stated that *they* saw nothing on the tape, as that does not contradict the testimony from Belohlavek and the detectives concerning *their* interpretation of the tape, which is the relevant basis for their probable cause determination.

Finally, while Martinez argues that the adverse presumption arising from Brinks' failure to produce the original surveillance tape alone permitted the jury to

Allstate Life Ins. Co. v. Miller, 424 F.3d 1113, 1116-17 (11th Cir. 2005).

10

find a lack of probable cause, we cannot agree.[7]  In the absence of any record evidence which would permit the jury to reasonably conclude that the state lacked probable cause, the adverse inference that the district court's instruction permitted the jury to draw cannot alone carry Martinez's burden on the issue of probable cause.  See 29 Am. Jur. 2d Evidence § 244 (1994) (explaining that an adverse spoliation inference "does not amount to substantive proof and cannot take the place of proof of a fact necessary to the other party's cause").  At best, the jury could reasonably have inferred that the missing surveillance footage would not have shown what the police detectives interpreted it to show.  That inference does not undermine the detectives' testimony concerning their interpretation of the tape and their reasonable reliance thereupon in determining that probable cause existed. As such this potential adverse inference cannot alone suffice to carry Martinez's burden of showing an absence of probable cause for the original criminal proceeding.  See 3M v. Pribyl, 259 F.3d 587, 606 n.5 (7th Cir. 2001) (explaining that the adverse inference which the jury could permissibly have drawn did not

---

[7]While the parties rely largely on Florida law concerning spoliation, we note as an initial matter that *federal* law governs the imposition of spoliation sanctions, such as the adverse inference instruction given here.  See Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005); see also, King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003) ("Evidentiary 'presumptions' which merely permit an adverse inference based on unproduced evidence are . . . controlled by federal law."); Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 449 (4th Cir. 2004) ("The imposition of a sanction (e.g., an adverse inference) for spoliation of evidence is an inherent power of federal courts.").

11

relieve the plaintiff of the burden of proving the elements of its claims).

**AFFIRMED.**