**Carmen DOE, Plaintiff,**

v.

**MIAMI–DADE COUNTY, et al., Defendants.**

**Case No. 06–22816–Civ.**

United States District Court, S.D. Florida.

May 23, 2011.

Maria Eleftheria Dalmanieras, Helen Ann Hauser, Restani Dittmar & Hauser, Coral Gables, FL, for Plaintiff.

Craig Edward Leen, City Attorney, City of Coral Gables, Coral Gables, FL, Marlon Delano Moffett, Miami, FL, for Defendants.

### ORDER AND REASONS

WILLIAM M. HOEVELER, Senior District Judge.

BEFORE the Court is Miami Dade County's motion for summary judgment. Also before the Court are three motions to strike various documents and affidavits submitted pursuant Rule 56(c). All the motions are fully briefed and the Court heard oral arguments January 5, 2011. For the reasons that follow, the County's motion for summary judgment is granted, and the three motions to strike are denied.

### I. Background

This case concerns the County's liability for hiring a police officer who used his law enforcement position to commit sexual crimes against minors, including the plaintiff. The facts pertaining to former Mia-

mi–Dade County policeman Paul Brosky's misconduct are undisputed. On August 12, 2002, he was working as a uniformed police officer for the township of Miami Lakes, in Miami Dade County. He approached a parked car holding the plaintiff, Carmen Doe, and her male companion, who was the driver. Brosky directed the boy to drive away alone, explaining that Doe needed to be escorted home by the police because she was a minor (seventeen at the time). Then, under the pretense of searching the plaintiff, Brosky fondled her breasts under her bra. He then forced her into his police cruiser, asked for sexual favors, kissed her, and finally drove her home. Carmen Doe initially remained silent about the incident. After another young victim made a complaint against Brosky for similar acts, he was relieved of duty September 3, 2002, and arrested September 6. During the Internal Affairs and police investigations that followed, a number of young women, including Carmen Doe, came forward with sexual misconduct reports about Brosky. Their stories paint a picture of a depraved man whose *modus operandi* was to approach groups of young people—often a boyfriend and girlfriend sitting in a parked car—then isolate the young women, commit a sexual battery or sexual assault, occasionally steal her money, property, or contraband for personal use, occasionally solicit sexual acts, then finally let her go.[1] Based on these incidents, Brosky was convicted of sexual battery and kidnaping, and sentenced to 50 years in jail, where he remains.

Brosky defaulted on Carmen Doe's civil claims in this lawsuit. The three remaining claims in her Third Amended Complaint ("the Complaint") are directed against the County. In Count III, the plaintiff asserts that the County was negligent in implementing County policies for the screening, hiring, and supervision of police officers; the plaintiff does not attack the actual substance of the County's hiring policies, but simply contends the police department disregarded its policies when it hired Brosky. In Count IV, the plaintiff asserts a federal civil rights claim under 42 U.S.C. § 1983, alleging the County was deliberately indifferent to her federal rights by tolerating a pattern of sexual abuses by police officers, and failing to implement a more thorough screening procedure for new applicants. Finally, in Count VI, the plaintiff asserts a state-law claim for negligent infliction of emotional distress against the County.

## II. *Evidentiary issues*

### A. Plaintiff's motion to strike the affidavit of Edmundo Valdes

The plaintiff moves to strike the affidavit of Edmundo Valdes, who is Commander of the Personnel Management Bureau for the Miami–Dade Police Department (MDPD), as well as MDPD's custodian of records. He has worked for MDPD since 1976. Valdes Aff. ¶¶ 1–2, June 1, 2010, ECF No. 127–1. In his affidavit, Valdes describes MDPD's hiring, supervision, and disciplinary procedures, based on his personal knowledge. He also comments on the training and evaluation that MDPD police officers receive during their "probationary period," which is their first year of police duty. Valdes does not purport to opine that these hiring, supervision, and disciplinary procedures meet the standards required by Florida law or the United States Constitution, he simply summarizes what the procedures are, and states how

---

1. The incidents are summarized in the deposition testimony and investigative reports of Sargent Alois Stier of the Miami–Dade Police Department's Public Corruption Investigation Bureau, as well as the deposition testimony of Miami–Dade police lieutenant Gary Oliver, who was the lead investigator of the criminal case against Brosky. *See* Pl.'s Ex. 12–16.

they are implemented in practice. *See id.* ¶¶ 4–11.

Further, he states that, as custodian of records for the police department, he reviewed the County's employment records and personnel databases to research sexual misconduct issues within the police force. He explains that a review of the records indicates that each time an allegation of misconduct was sustained, the offending officer was appropriately disciplined. *Id.* ¶ 12. He further states that he searched for "evidence of an incident similar to that alleged by the Plaintiff for four (4) years before August 12, 2002.... This exhaustive review produced no evidence of any other incident(s) in which an MDPD officer, including Brosky, was known to have committed sexual or criminal misconduct, and not disciplined accordingly." [2] *Id.* ¶ 13. Valdes also states if an applicant's file contained information indicating a propensity to commit sexual misconduct, that applicant was not hired. *Id.* ¶ 14.

Finally, Valdes asserts that "Paul Brosky's background investigation and screening [were] properly conducted according to the County's hiring procedures, and did not reveal any information indicating that he would commit any sexual misconduct." *Id.* ¶ 17.

■ The plaintiff contends that the Valdes affidavit, or portions of it, should be stricken for several reasons. First, the plaintiff argues that Valdes's comments about police officer training and evaluation during the probationary period should be stricken, because MDPD allegedly lost some of the pertinent records from the first part of Brosky's probationary period, know as the "ride-along" period. However, Valdes has not specifically commented about the details of Brosky's ride-along period; rather, he simply sets forth MDPD's general probationary-period policies and protocols, based on his personal knowledge. This information is reliable, relevant, and not prejudicial to the plaintiff.

Second, the plaintiff argues that Valdes is not an expert on police hiring and training. This argument is misplaced. Valdes has not been offered as an expert and, as far as the Court is concerned, he has not offered expert opinions on any subject. For example, Valdes does not, as the plaintiff claims, offer a "pure opinion on the critical issue [of] whether there was any failure to properly investigate or supervise Brosky," nor on the issue of "whether MDC's policies for hiring and supervision were so lax as to create a known danger of violating citizens' civil rights." Reply in Support of Mot. to Strike, p. 5, ECF No. 153. On the contrary, regarding Brosky's background investigation, Valdes simply states in Paragraph 17 of his affidavit that the "background investigation and screening [were] properly conducted *according to the County's hiring procedures,* and did not reveal any information indicating that he would commit any sexual misconduct." Valdes Aff. at ¶ 17 (emphasis added). There can be no question that Valdes is well-positioned to know the facts and decide whether a particular applicant's background check was performed according to the procedures that Valdes himself is charged with overseeing. Second, on the issue of whether MDPD's policies "create[d] a known danger of violating citizens' civil rights," Valdes doesn't come close to offering such an opinion. He doesn't even address that subject.

---

**2.** The plaintiff challenges Valdes's use of the word "exhaustive." The Court obviously does not need not to accept Valdes's choice of that particular degree modifier. Suffice it to say, Valdes found no evidence that MDPD permits sexual misconduct.

■ Finally, the plaintiff argues Paragraph 17 should be stricken because Valdes was not personally involved in Brosky's background check in 1999, nor did Valdes review the deposition testimony of the investigative specialist, Martha Rodriguez. The plaintiff claims that Valdes was therefore unqualified to discuss whether Brosky's background investigation conformed to MDPD policies. Before Valdes executed his affidavit, however, he read Brosky's application, background file, psychological reports, and all the evidence of record about Brosky's evaluation, including the investigative notes. *See* Valdes Dep. 44–45, June 29, 2010, ECF No. 145–1. This is sufficient, and reading the transcript of Ms. Rodriguez's deposition is not a prerequisite.[3] And regardless, the Court has independently reviewed the rather straight-forward facts about Rodriguez's investigation. Valdes's factual statements about the investigation are consistent with the evidence. There is no basis to strike any portion of Commander Valdes's affidavit, and the motion is therefore denied.

## B. Plaintiff's motion to strike the attachments to the County's reply brief

■ The County attached twelve exhibits to its reply brief in support of summary judgment, ECF Nos. 147–1 to 147–12. The plaintiff objects that the new exhibits raise issues that were not raised by the plaintiff's opposition brief, and that the exhibits are therefore not appropriate "rebuttal" evidence for a reply. The Court disagrees. The attachments to the reply were: (1) related and responsive to the plaintiff's opposition brief, (2) previously produced to the plaintiff, and (3) they would obviously be introduced at trial, anyway. The plaintiff never sought permission to submit a sur-reply, and the Court held a full hearing on the summary judgment motion long after the twelve disputed exhibits were introduced into the proceedings, giving the plaintiff further opportunity to address them and present her best case. The plaintiff's motion to strike the exhibits is denied.

## C. Defendant's motion to strike the affidavit of Robert Pusins

■ The County moves to strike the affidavit of Robert Pusins.[4] The motion is denied. An affidavit containing conclusory assertions will not create an issue of fact sufficient to defeat a motion for summary judgment, *see Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir.2000), and the County is correct that some of the statements in the Pusins affidavit verge on legal conclusions, and they are not particularly helpful, since these legal issues are for the Court to decide.[5] Nevertheless,

---

3. It appears that the plaintiff's expert, Robert Pusins, may not have read Martha Rodriguez's deposition very closely, either. Pusins asserts in his affidavit that Rodriguez "completely failed to investigate Brosky's domestic disturbance incident...." Pusins Aff. ¶ 4, Sept. 17, 2010, ECF No. 144–3. But this is incorrect. In fact, it is clear from Rodriguez's deposition that she questioned Brosky about the domestic incident, then she knocked on the doors of Brosky's neighbors to investigate further. Rodriguez Dep. 75–76, ECF No. 144–9.

4. Mr. Pusins's affidavit indicates he was retained as an "expert in the area of police procedures." The plaintiff initially failed to provide Mr. Pusins's resume and qualifications, but later supplemented the record.

5. For instance, Pusins opines that "MDC's conduct in relation to Brosky was not an isolated instance of negligence, but reflects a number of customs and policies that were obviously very likely to lead to a hiree violating the civil rights of members of the public.... These customs and practices were a direct cause of Brosky's violations of Plaintiff's civil rights guaranteed under the Eighth and Fourteenth Amendments." Pusins Aff. ¶ 8, Sept. 17, 2010, ECF No. 144–3.

with that caveat, the Court will accept Mr. Pusins's affidavit for whatever it is worth.

## D. Spoliation of evidence

■ The plaintiff contends the County should be penalized for failing to preserve certain records about Brosky and other police officers, including records about the first four months of Brosky's probationary period, and psychological reports for some of the officers implicated in misconduct during the relevant time period. The plaintiff urges the Court to presume that the missing records would be unfavorable to the defendant.[6]

■ "Spoliation" is the intentional destruction, mutilation, alteration, or concealment of evidence. *Walter v. Carnival Corp.*, 2010 WL 2927962, *2 (S.D.Fla. July 23, 2010) (*citing St. Cyr v. Flying J Inc.*, 2007 WL 1716365, *3 (M.D.Fla. June 12, 2007)). Federal law governs the imposition of sanctions for spoliation of evidence in a diversity action. *See Martinez v. Brink's, Inc.*, 171 Fed.Appx. 263, 269 (11th Cir.2006).[7] To establish spoliation, the party seeking sanctions must prove several things; first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense. *See Floeter v. City of Orlando*, 2007 WL 486633, *5 (M.D.Fla. Feb. 9, 2007). But a party's failure to preserve evidence rises to the level of sanctionable spoliation "only when the absence of that evidence is predicated on bad faith," such as when a party purposely loses or destroys relevant evidence. *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th

Cir.1997). "Mere negligence" in losing or destroying records is not enough for an adverse inference, as "it does not sustain an inference of consciousness of a weak case." *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir.1975). If direct evidence of bad faith is unavailable, bad faith may be founded on circumstantial evidence, if the following criteria are met: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Walter v. Carnival Corp.*, 2010 WL 2927962, *2 (citing *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, *16 (S.D.Fla. Nov. 16, 2009)). Here, the plaintiff has failed to present direct or circumstantial evidence demonstrating the County's bad faith in losing any of the records, or evidence suggesting the County engaged in an intentional affirmative act causing the records to be lost. Accordingly, the Court does not find that the County's failure to keep, or inability to provide, the records that the plaintiff has requested warrants a presumption that the records were unfavorable.

## III. *Legal standard*

Rule 56(c) of the Federal Rules of Civil Procedure instructs that summary judgment is proper "if the pleadings, de-

---

6. The parties dispute the extent to which the County failed to provide records. For the sake of argument, the Court assumes that at least some of the disputed records were lost.

7. The Eleventh Circuit has held that appropriate sanctions for spoliation may include,

among other things, (1) dismissing the case; (2) excluding expert testimony; or (3) instructing the jury that spoliation of evidence raises a presumption against the spoliator. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir.2005).

positions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and any doubts about whether a trial is necessary should be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### IV. *State law claims*

### A. Negligent hiring

■■■■ The Court previously ruled, and the plaintiff concedes, that the County cannot be held liable in a negligence action concerning the content of its hiring policies, no matter how ineffective the policies are alleged to be. This is because, "under Florida law, a governmental entity is immune from tort liability based on actions that involve its 'discretionary functions.'" *Cook v. Sheriff of Monroe County,* 402 F.3d 1092, 1117 (11th Cir.2005). A discretionary function is "an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Kaisner v. Kolb,* 543 So.2d 732, 737 (Fla.1989) (citation omitted). By contrast, an operational function "is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Cook,* 402 F.3d at 1117. A claim that a state agency has acted negligently in its "operational" capacity is not barred by sovereign immunity.

■■■■ Thus, to sustain a claim against the County for negligent hiring, the plaintiff must present evidence that the County either disregarded or negligently implemented pre-existing protocols. *See Id.* at 1118. Put differently, the plaintiff must show that Brosky was unfit to be hired even under the County's own rules and standards. To determine whether the County acted in a discretionary function, the Court must logically compare two sets of evidence. The first set is the evidence of MDPD's actual hiring policies, as stated in the Standard Operating Procedures Manual, and elaborated upon in the submissions of Commander Edmundo Valdes and Ken Tataris, a specialist in the area of police officer hiring. The second set is evidence concerning how these general standards were applied to the particular hiring of Paul Brosky, as evidenced by the deposition testimony of Martha Rodriguez (who assessed Brosky's application), the numerous documentary reports generated during Brosky's evaluation, and the testimony or affidavits of Commander Valdes, Robert Pusins, and others. Upon review of the record, it is clear that the County did not breach its policies and procedures in hiring Brosky, and is therefore entitled to sovereign immunity on summary judgment.

Although the plaintiff argues the police department should have conducted a deeper investigation into alleged irregularities and/or discrepancies from Broskys psychological evaluation and background check, even the plaintiff's expert on police hiring procedures, Robert Pusins, fails to point out any specific instance when the department actually breached its protocol. For example, Pusins states that, "MDC's pre-hiring investigation of Paul Brosky fell far below acceptable standards in the *pertinent law enforcement community.*" Pusins Aff. ¶ 4, Sept. 17, 2010, ECF No. 144–3 (emphasis added). But for the purpose of the sovereign immunity analysis, the only "standards" that matter are the ones that were actually in place in Miami Dade

County at the time. The question is simply: Did the police department obey its own hiring policies? And the answer is, yes, it did. Similarly, Pusins claims that candidates who test as "marginal" on their psychological examinations "simply should not be hired, as a general rule," *id.* ¶ 5, and that MDC's estimation that up to 30 or 35 percent of new police officers tested "marginal" on aspects of their psychological examinations "is not an acceptable ratio for any law enforcement agency." Pusins submits that the problem is exacerbated by the fact that "the only follow-up that the MDC investigators are trained to perform is to call the [applicant's] current supervisor" to make further inquiry about the "marginal" aspect of the applicant's psychology.[8] *Id.* He concludes that the County:

> failed to follow minimum standards generally accepted in the law enforcement community. MDC's conduct in relation to [its hiring, supervision, and retention of] Brosky was not an isolated instance of negligence, but reflects a number of *customs and policies* that were obviously very likely to lead to a hiree violating the civil rights of members of the public.

*Id.* ¶ 8 (emphasis added). Again, these assertions plainly speak to the actual substance and content of the County's policies and procedures, not to their implementation.

The plaintiff also draws attention to three comments made by Sergeant Alois Stier at his deposition. Stier, who led the internal affairs investigation against Brosky, testified that, in his mind, the "only thing that would stick out in [Brosky's] background investigation" was the Georgia arrest dating from when Brosky was in the military, for having a weapon in his vehicle during a traffic stop. Stier Dep. 16, April 16, 2010, ECF No. 144–12. But Stier noted the gun charge was non-prosecuted and expunged, and Stier ultimately concluded that the incident "might have been a little unusual but, again, within acceptable standards." *Id.* Second, Stier commented that it was arguably unusual that Brosky failed to achieve a higher rank in the military (despite six or seven years of service). But Stier acknowledged that lack of military promotion could be related to "attitude, work performance, [or] just *about anything.*" *Id.* at 18 (emphasis added). Third, Stier observed that, although he was unfamiliar with standards for analyzing psychological investigations, the results of Brosky's psychological exam "struck [him] as odd, that's all." *Id.* at 21. None of these observations suggest the police department negligently implemented its hiring criteria, and they do not open the sovereign-immunity door to the plaintiff's negligence claim. The plaintiff has failed to adduce evidence Brosky's hiring was anything other than by-the-book. Thus, the plaintiff cannot establish the County was negligent in its "operational capacity."

Further, it bears pointing out that even in the absence of sovereign immunity, the Court does not perceive any clues from Brosky's background that he posed an unacceptable risk under any realistic hiring standard. The supposed "red flags" about Brosky's application were, at most, that he, (1) *arguably* provided evasive (though not false) information about smoking marijuana one time in 1983, and he *may* have given marginally inconsistent details about smalltime gambling in Las Vegas a decade earlier ago; (2) received between two and

---

8. Pusins opines that "[t]his is certainly not an acceptable method of protecting the public from abuse at the hands of police, and is far below the standard of care for a law enforcement agency. It should be obvious to anyone that the combination of MDC's accepted customs, policies, and procedures ... creates a strong likelihood that these hirees" will violate the law. *Id.* ¶ 5.

four traffic tickets in the past; (3) was once arrested in Georgia for carrying a concealed weapon, but the charges were dropped; and (4) was involved in a domestic disturbance in 1991, when the police responded to shouting between him and his wife.[9] None of these details disqualified Brosky from serving as a policeman, or put the County on notice he posed an abnormal risk. As a result, even if the hiring of Brosky were an operational function, there would be insufficient evidence for a trial on whether the County violated a duty of care to the plaintiff. The defendant's motion for summary judgment on the negligent hiring claim in Count III is granted.

## B. Negligent supervision and retention

According to the plaintiff, MDPD became aware of several incidents and/or complaints involving Brosky after he was hired that should have caused the police department to supervise him more closely. I will summarize the plaintiff's evidence on this point, for the record.

In one instance, Brosky approached a large group of young people gathered around two cars parked in a residential area where none of the youngsters lived. Ross Dep. 49–52, July 17, 2009, ECF No. 144–13. One of Brosky's supervisors, Sergeant Benjamin Ross, happened to be driving by the scene. Ross stopped to assist Brosky roadside. The two officers completed the stop according to protocol. Afterwards, Ross warned Brosky about officer safety, explaining the potential dangers of approaching a crowd of subjects alone.

Ross told Brosky that he should ordinarily call for backup in those situations, to "deter[ ] . . . anyone who thinks that they might want to try and do something [to harm the officer]." *Id.* at 55. The record shows that Sergeant Ross properly handled the situation according to MDPD's "Counseling and Disciplinary Actions" guidelines, Sec. 3(1)(A), ECF No. 147–7. Other than that occasion, Ross never saw Brosky do anything improper.

Although the plaintiff draws attention to a citizen complaint from July 2002 about an unidentified police officer or fireman who stole $150 from a home during the investigation of a fire, Brosky was not implicated in that theft until after he was arrested in September 2002. The plaintiff also contends that MDPD should have removed Brosky as of August 21, 2002, when the department received a complaint that Brosky stole jewelry from a woman during an improper search. This incident occurred after Brosky's improper search of Carmen Doe, which happened on August 12, 2002, and, therefore, could not have put the County on notice of Brosky's danger in time to prevent what happened. Doe nevertheless claims that if MDPD took immediate disciplinary action against Brosky based on the unverified theft complaint, Brosky would have at least been prevented from allegedly "stalking" her during the weeks following her sexual assault. But unfortunately, the theft allegation was not verified until September 13, 2002, once Brosky was already fired and arrested. Additionally, MDPD did not know of any

---

9. The domestic incident generated no police reports or further action. The background investigator assigned to Brosky's file, Martha Rodriguez, visited Brosky's neighborhood, knocked on doors, and spoke to neighbors, who reported no problems. *See* Rodriguez Dep. 75–76, ECF No. 144–9. The plaintiff faults Rodriguez for failing to inquire about the shouting incident with Brosky's "wife or

other relatives, or anyone else who might actually know whether there was a domestic violence problem." Pl.'s Opp. to Sum. Judgment, p. 9, ECF No. 144. But in many cases, the neighbors are an equally reliable (if not more reliable) source of information about domestic disturbances, especially in Brosky's case since the neighbors were apparently responsible for summoning the police in 1991.

incident involving the plaintiff, including any alleged stalking, until September 12, 2002.[10]

Thus, there is no indication MDPD knew or should have known any information about Brosky that would have required closer supervision or discipline. As stated above, the Court will not presume the existence of incriminating evidence in the missing records from Brosky's "ride-along" period merely because plaintiff's counsel claims those records were not provided in the form or complete manner requested, a charge that is disputed.

### C. Negligent infliction of emotional distress

In Count VI, the plaintiff asserts a claim of negligent infliction of emotional distress against the County. The claim is premised on the County's direct negligence in hiring and retaining Brosky, and not on the County's vicarious liability for Brosky's misconduct.[11] This claim presents basically the same theory as the negligent hiring and retention claim in Count III. For the same reasons the plaintiff failed to overcome sovereign immunity under Count III, the County's motion for summary judgment as to Count VI is granted.

### V. *Federal civil rights claims*

#### A.

■ Unlike the state-law negligence claim, the plaintiff's federal civil rights claim under 42 U.S.C. § 1983 is an appropriate vehicle to attack the substance of the County's hiring, training, and retention policies. Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. It is well settled that municipalities and their agencies can be sued directly under § 1983 for damages. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, municipalities bear liability only when the action alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or the action is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018.

■ Here, the plaintiff proceeds under the "policy or custom" theory of *Monell,* claiming the County was deliberately indifferent to the allegedly unconstitutional consequences of its hiring and training practices. For example, the plaintiff alleges in her complaint that:

34. MDC, by and through its Board of County Commissioners and/or City Manager, was deliberately indifferent in instituting a policy by which it failed to properly hire and train its police officers, including Brosky, and failed to

---

10. With respect to the County's retention of Brosky, Pusins is critical of the alleged *"policy* of not notifying an officer's supervisor that the officer is under investigation for a serious offense." Pusins Aff. ¶ 7 (emphasis added). Pusins expressly faults the County's "policy," the implementation of which is a "discretion-

ary function" that is immune from attack in a negligence case.

11. Brosky's acts were obviously malicious, and therefore cannot form the basis of MDPD's liability, because of Fla. Stat. § 768.28.

properly screen its police officers for dangerous propensities, lack of training, and/or other characteristics making him unfit for duty. . . .

37. With deliberate indifference to the Plaintiff, Doe's personal safety, MDC failed to protect Plaintiff from substantial risk of serious harm, including physical and sexual assault and abuse in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments. . . .

Third Am. Compl. ¶¶ 34, 37. To succeed in this claim, as with any § 1983 claim under *Monell,* the plaintiff must establish that, (1) her constitutional rights were violated; (2) the County maintained a policy or custom that constituted deliberate indifference to her constitutional rights; and (3) the violation was caused by the policy or custom. *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The key issue on summary judgment is whether Doe can prove the County acted with "deliberate indifference," a standard that has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999).

 In some cases, inadequate screening, training, or retention of police officers can rise to the level of deliberate indifference to the rights of persons with whom the police come into contact. *See City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197. Most § 1983 plaintiffs try to demonstrate deliberate indifference by introducing evidence of "continued adherence to an approach that [policymakers] know or should know has failed to prevent tortious conduct," or by pointing out "the existence of a pattern of tortious conduct by inadequately trained employees." *See Bryan County v. Brown,* 520 U.S. 397, 407–08, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The theory is that, if a pattern of constitutional abuses ensues from a policy maker's inaction, it can fairly be said that the policy maker, in effect, has ratified and endorsed those constitutional abuses by doing nothing.

Applying this standard to the present case, Doe must show that the need to screen police officer applicants in a particular manner or for a particular characteristic, or supervise him in a particular manner, was obvious. *Young v. City of Augusta,* 59 F.3d 1160, 1172 (11th Cir. 1995) (*citing Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir. 1991)). Put differently, the plaintiff must adduce evidence suggesting the County knew or should have known of the need to implement better safeguards, yet made a deliberate choice not to do anything. *See Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998). Additionally, the plaintiffs must show that the hiring and retention procedures themselves were constitutionally deficient; not simply that Brosky managed to slip through the cracks of an otherwise workable system. *See City of Canton,* 489 U.S. at 390–9, 109 S.Ct. 1197.

## B.

The plaintiff alleges that several "policies or customs" were the moving force behind her injuries. The first is the County's alleged custom of hiring police officers whose background checks or psychological exams (or combination of both) exhibit "red flags" that are not scrutinized, nor considered disqualifying traits. In particular, the plaintiff submits that between 1999 and 2000, approximately 30 to 35 percent of new MDPD police officers were noted as presenting a "marginal" risk factor on their psychological reports. (That statistic is undisputed.) Brosky's psychological screening was administered on De-

cember 29, 1999, and the results are recorded on a two-page report attached as Exhibit 11 to the plaintiff's opposition to summary judgment. Under the section of the report titled "Areas for Investigation," the examiner writes:

> 1. Test data suggests a mild to moderate deficit in the following area: EXPRESSION OF HOSTILITY—Inability to acknowledge normal feelings of anger and express them appropriately. May tend to extremely over-control angry emotions which can lead to episodic strong outbursts. Could allow frustration and stress building to a "pressure cooker level."

To put the "EXPRESSION OF HOSTILITY" paragraph in context, it is one of thirteen pre-written "Statements" included in the psychological evaluation guidelines manual. It was copied directly from the guidelines and was not written specifically about Brosky. Each of the thirteen Statements summarizes a different trait that is considered a potential "Area for Investigation"; each Statement starts off: "Test data suggests a mild to moderate deficit in the area of ..." and proceeds with descriptions of such characteristics labeled as "STRESS MANAGEMENT," "INTEGRITY," "IMPULSE CONTROL," "ADDICTION TOLERANCE," and so forth. The guidelines attached to the examiner's report explain that: "Areas for Investigation represent tendencies or possible problematic traits which may interfere with the applicant's performance as a police officer. However, these traits were not so pronounced on the examination as would be an exclusionary trait." Because of the single area of concern noted on Brosky's examination report, he, like 30 to 35 percent of new hires during his era, was given the "risk classification" of "marginal," thereby denoting: "[a]n applicant who has ... met minimal standards but who possesses multiple or major areas for investigation and should be looked at closely during back-ground and subsequent training and probation periods should they be hired." Having a marginal classification is not disqualifying; rather, it triggers an investigation into the particular area of concern. Specifically, it requires the MDPD investigative specialist to inquire with the applicant's employer· to ask whether the employer has observed the trait identified as an area of concern. Martha Rodriguez performed this required investigation, and she was satisfied Brosky was fit for duty.

But the plaintiff argues this minimal follow-up is not enough to protect Florida citizens from potentially dangerous policemen. The plaintiff draws attention to the 51 instances in which MDPD officers were accused of sexual misconduct in the four-year span before Brosky was hired. The plaintiff argues the 51 instances constitute a widespread pattern of sexual abuses that should have alerted the County that its screening policies systematically failed to identify potential sexual deviants.

**C.**

The plaintiff's case for *Monell* liability is flawed in several respects. The first flaw is that the plaintiff has failed to establish the County acted with deliberate indifference. As discussed above, "deliberate indifference" is determined by analyzing whether the defendant knew or reasonably should have known of the risk of constitutional violations, which knowledge may be imputed through a pattern of prior constitutional violations. *Young v. City of Providence ex rel. Napolitano,* 404 F.3d 4 (1st Cir.2005). It means simply that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, a municipality may not adopt a policy of inaction. *See Warren v. District of Columbia,* 353 F.3d 36 (D.C.Cir. 2004) (*citing Farmer v. Brennan,* 511 U.S. 825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Allegations of "deliberate indifference" with regards to police hiring deci-

sions do not establish a basis for *Monell* liability "where plaintiff proffers no evidence of a historical practice of recklessly conducting background investigations for police officer applicants which continued despite a documented pattern of constitutional violations committed by an unstable or otherwise unqualified force." *Jackson v. Montesino*, 2009 WL 1515511, *8 (S.D.Fla. June 1, 2009).

Conspicuously absent from the summary judgment record is evidence of a single instance in which the County hired a police officer applicant who was known to exhibit dangerous sexual aggression issues, or a single instance in which the County tolerated or approved of such misconduct by police officers. The plaintiff attempts to impute knowledge on the County by drawing attention to the 51 instances of sexual misconduct reported over four years. But three principal considerations cause this Court to conclude that the 51 sexual misconduct accusations are insufficient to establish deliberate indifference. For one, the undisputed factual record shows that allegations of police misconduct, including sexual misconduct, automatically triggers a formal investigation by the Professional Compliance Bureau. The Bureau interviews witnesses, gathers relevant documents, and prepares a written summary for review by the department's chain of command. Valdes Aff. ¶ 9. Each time a claim of misconduct is sustained, the offending officer is punished accordingly. *Id.* at ¶ 12.

For two, although the County concedes that at least some of the sexual misconduct complaints were sustained, it is undisputed that many or most of the claims were, after investigation, unsustained. In judging the scope or existence of a pattern of constitutional violations, the Court requires more than evidence of accusations.

*See, e.g., Mettler v. Whitledge,* 165 F.3d 1197, 1205 (8th Cir.1999) ("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force.") (citation omitted); *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir.1987) ("Indeed, the number of complaints bears no relation to their validity.").

For three, at the hearing, counsel for the County represented there are slightly more than 3,000 sworn police officers presently employed by the County. Because of officer turnover, the total number of sworn police serving at *some point* during the four-year span of the 51 sexual misconduct reports would have been even larger. The Court does not find that 51 sexual misconduct claims over four years—in an extremely large police force, and including many claims that were never supported—establishes a widespread pattern of constitutional abuses directly caused by the County's failure to implement different screening measures.

The second flaw in the plaintiff's case for *Monell* liability is causation. There is simply no evidence that a more thorough investigation of Brosky's background would have uncovered disqualifying data. In addition to Brosky's initial background check, he was subsequently investigated by Internal Affairs, and in connection with his criminal case. But even then, it appears that no information ever emerged from Brosky's personal history that would have signaled a propensity for sexual misconduct. In other words, even in hindsight, and viewing Brosky's background through the lens of what we now know about him, it is still difficult or impossible to discern clues from his past that would have disqualified him from police service, even based on a favorable view of the plaintiff's evidence.[12] Although the

---

12. At the hearing, plaintiff's counsel stressed

that Brosky never should have been on the

plaintiff urges that a more rigorous evaluation should have been performed, she has not explained how different screening measures would have resulted in a different outcome. Even Pusins's proposed solution of automatically disqualifying any applicant with a "marginal" risk would not have prevented sexual misconduct, considering more than half of the 51 sexual misconduct accusations involved police officers who earned the highest psychological grade. The Supreme Court has held that only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the obvious consequence of hiring the applicant would be the deprivation of a third party's federally-protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference. *See Bryan County v. Brown*, 520 U.S. 397, 412, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see also Doe v. Mann*, 2007 WL 604981, *5 (M.D.Fla. February 22, 2007) ("Even if [the police officer] had been given thorough psychological evaluations ... Plaintiff has not presented any evidence that this would have resulted in a different hiring or promotion decision."). Here, there is no evidence Brosky's danger to Carmen Doe realistically could have been detected, regardless of the screening measures in place.

## VI. *Conclusion*

Paul Brosky's misconduct at the core of this lawsuit is reprehensible, and the harm that Carmen Doe suffered in the summer of 2002 is undeniable. But the only defendant remaining in this lawsuit is the County, and the principles of sovereign immunity and qualified immunity combine to make it impossible for the plaintiff to succeed in her claims in the Third Amended Complaint against the County. Accordingly, it is hereby:

**ORDERED AND ADJUDGED:**

1. The plaintiff's motion to strike the affidavit of Edmundo Valdes [ECF No. 145] is denied;

2. The plaintiff's motion to strike the County's attachments to its reply brief [ECF No. 148] is denied;

3. The County's motion to strike the affidavit of Robert Pusins [ECF No. 151] is denied;

4. The County's motion for summary judgment [ECF No. 125] is granted. Final judgment is entered in favor of the County, and against the plaintiff, on all counts.

5. Final judgment will be entered by separate order.

street because it was "plainly foreseeable for anybody who took a good look at [Brosky's record] that if you hire this gentleman, he is going to violate the civil rights of your citizens sooner rather than later." Similarly, Pusins stated in Paragraph 3 of his affidavit that "[h]ad the investigator done an adequate job, more likely than not, she would have located additional negative information about Brosky that would have prevented his hiring." However, these positions were not supported by summary judgment evidence.

In re CHECKING ACCOUNT OVERDRAFT LITIGATION.

This Document Relates To:

Luquetta v. JPMorgan Chase Bank, N.A., S.D. Fla. Case No. 1:09–cv–23432–JLK, CD. Cal. Case No. CV09–6967–GHK.

Larsen v. Union Bank, N.A. S.D. Fla. Case No. 1:09–cv–23235–JLK, N.D. Cal. Case No. 4:09–cv–3250.

Duval v. Citizens Financial Group, Inc., N.D. Ill. Case No. 10–cv–00533, S.D. Fla. Case No. 1:10–cv–21080–JLK.

Daniels v. Citizens Financial Group, Inc., D. Mass. Case No. 10–cv–10386, S.D. Fla. Case No. 1:10–cv–22014–JLK.

Blankenship v. RBS Citizens, N.A., D.R.I. Case No. 10–163S, S.D. Fla. Case No. 1:10–cv–22942–JLK.

Simmons v. Comerica, Inc., N.D. TX Case No. 3:10–cv–326, S.D. FL Case No. 1:10–cv–22958–JLK.

Dwyer v. TD Bank, N.A., D. Ma. Case No. 1:09–12118, S.D. Fla. Case No. 10–cv–20855–JLK.

Mascaro v. TD Bank, N.A., D.D.C. 1:10–cv–0040, S.D. Fla. Case No. 10–cv–21117–JLK.

Mosser v. TD Bank, N.A., E.D. Pa. 2:10–cv–00731, S.D. Fla. Case No. 10–cv–21386–JLK.

Mazzadra, et al. v. TD Bank, N.A., S.D. Fla. Case No. 1:10–cv–21870–JLK,

Casayuran, et al. v. PNC Bank, National Association, S.D. FL. Case No. 10–cv–20496–JLK.

Cowen, et al. v. PNC Bank, National Association, S.D. FL. Case No. 10–cv–21869–JLK.

Hernandez, et al. v. PNC Bank, N.A., S.D. FL. Case No. 10–cv–21868–JLK.

Matos v. National City Bank, S.D. FL. Case No. 10–cv–21771–JLK.

Steen v. Capital One, N.A., E.D. La. Case No. 2:10–cv–01505–JCZ–KWR, S.D. Fla. Case No. 1:10–cv–22058–JLK.

Case No. 09–MD–02036–JLK.
MDL No. 2036.

United States District Court,
S.D. Florida.

July 13, 2011.

Robert Cecil Gilbert, Miami, FL, for Checking Account Overdraft Litigation/Ralph Tornes, April Speers, Estella A. Lopez, John C. Stone, Charles Reed, Jr., Linda McDaniel, Andrea Luquetta.

Jeremy William Alters, Kimberly Lynn Boldt, Alters, Boldt, Brown, Rash & Culmo, P.A., William Charles Hearon, Miami, FL, for Plaintiff Melanie L. Garcia/Ralph Tornes, April Speers, Estella A. Lopez, John C. Stone, Charles Reed, Jr., Linda McDaniel, Andrea Luquetta.

Bruce S. Rogow, Bruce S. Rogow PA, Fort Lauderdale, FL, Burton H. Finkelstein, Eugene J. Benick, Tracy D. Rezvani, Finkelstein Thompson LLP, Washington, DC, Rosemary M. Rivas, Finkelstein Thompson LLP, San Francisco, CA, for Plaintiff, Ralph Tornes, April Speers, Estella A. Lopez, John C. Stone, Charles Reed, Jr., Linda McDaniel, Andrea Luquetta.

Barry R. Himmelstein, Jordan Elias, Michael W. Sobol, Mikaela Bernstein, Roger Norton Heller, Lieff Cabraser Heimann & Bernstein, R. Scott Erlewine, Phillips & Erlewine & Given LLP, San Francisco, CA, Jae Kook Kim, McCune Wright LLP, Redlands, CA, for Plaintiff Celia Spears–Haymond, Mike Amrhein, Steve Yourke, Kristine Richards, Willyum Waters, Frank Smith, Faith Gordon, Cynthia Larsen.

Richard D. McCune, Jr., McCune Wright LLP, Redlands, CA, for Plaintiff, Celia Spears–Haymond, Mike Amrhein, Steve Yourke, Kristine Richards, Willyum Waters, Frank Smith, Faith Gordon, Cynthia Larsen/Michelle Gulley.

Nicholas A. Carlin, Phillips & Erlewine & Given LLP, San Francisco, CA, for Plaintiff Celia Spears–Haymond, Mike Amrhein, Steve Yourke, Kristine Richards, Willyum Waters, Frank Smith, Faith Gordon, Cynthia Larsen/Maxine Aarons Given.

Edward Adam Webb, G. Franklin Lemond, Jr., Webb Law Group LLC, Atlanta, GA, for Plaintiff, William W. Powell, Jr., Jeffrey Buffington, Jeanette Buffington, Lawrence D. Hough, Pamela J. Hough.

John Matthew Geyman, John Wentworth Phillips, Phillips Law Group PLLC, Seattle, WA, for Plaintiff Alex Zankich, William Rucker.

Denyse Clancy, Baron Budd LLP, Dallas, TX, for Plaintiff Vada Mitchell, Daisy Webb.

Stephen P. Willison, Willison & Hellman PC, Grand Rapids, MI, for Plaintiff Michelle Gulley.

Bonny E. Sweeney, Lerach Coughlin Stoia Geller Rudman & Robbins, San Diego, CA, for Plaintiff Donald Kimenker.

James Jason Hill, Jeffrey James Geraci, Cohelan Khoury & Singer, San Diego, CA, for Plaintiff John D. Kirkland.

Joshua L. Ross, Stoll Stoll Berne Lokting & Shlachter, Portland, OR, Steve D. Larson, for Plaintiff Dolores Gutierrez.

Chaim S. Setareh, Law Office of Shaun Setareh APC, Beverly Hills, CA, Marcus J. Bradley, Marlin & Saltzman, Agoura Hills, CA, for Plaintiff Sandra Quarles.

Genessa A. Stout, Hagens Berman Sobol Shapiro LLP, Seattle, WA, for Plaintiff Marc Martinez.

Ari Y. Brown, Hagens Berman Sobol Shapiro LLP, Seattle, WA, for Plaintiff Marc Martinez/Alex Zankich, William Rucker.

Miriam Zakarin, TEVA North America, North Wales, PA, Norah Hart, Treuhaft & Zakarin, LLP, New York, NY, for Plaintiff Angela Walsh–Duffy, Brett Freeman.

Alan M. Mansfield, The Consumer Law Group, San Diego, CA, Howard Weil Rubinstein, Aspen, CO, Marian S. Rosen, Marian S. Rosen & Associates, Houston, TX, for Plaintiff Katherine Anne Williams.

Alisha A. Martin, James R. Patterson, Harrison Patterson & O'Connor, San Diego, CA, for Plaintiff Josh Naehu–Reyes.

David M. Given, Phillips & Erlewine & Given LLP, San Francisco, CA, for Plaintiff Maxine Aarons Given.

Aaron S. Podhurst, Robert C. Josefsberg, Steven C. Marks, Peter Prieto, Stephen F. Rosenthal and John Gravante III, Podhurst Orseck, P.A., Miami, FL, for Plaintiffs.

Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, Jeffrey F. Keller, Keller Grover LLP, San Francisco, CA, for Intervenor Plaintiff George Burke, Robert Lowe, Lori Aldana, Shane Parins, Kara Parins.

Alexandria Rose Kachadoorian, Lisa M. Simonetti, Stroock & Stroock & Lavan, Los Angeles, CA, for Defendant Citibank FSB/Citibank Inc., Citibank (West), FSB, Citibank, N.A.

Barbara J. Dawson, Robert Matthew Kort, Snell & Wilmer LLP, Phoenix, AZ, Brian J. Meenaghan, Ronald E. Beard, Rudy Albert Englund, Tara N. Gillespie, Lane Powell PC, Seattle, WA, Bryanne J. Schmitt, David M. Jolley, Margaret G. May, Steven Duane Sassaman, Covington & Burling LLP, San Francisco, CA, Dori Katrine Stibolt, West Palm Beach, FL,

Emily Johnson Henn, Covington & Burling, Washington, DC, Jay Earl Smith, Smith Larsen & Wixom, Las Vegas, NV, Tracy L. Ashmore, Holme Roberts & Owen LLP, Denver, CO, for Defendant Wells Fargo Bank, N.A., Wells Fargo & Company.

Sonya Diane Winner, Covington & Burling LLP, San Francisco, CA, for Defendant Wells Fargo Bank, N.A., Wells Fargo & Company/Bank of America, N.A., Bank of America Corporation, Bank of America, California/Citibank Inc., Citibank (West), FSB, Citibank, N.A./U.S. Bank, NA.

Ashley F. Cummings, Jason M. Beach, Lawrence J. Bracken, II, Hunton & Williams, Atlanta, GA, Leda Dunn Wettre, Robinson Wettre & Miller LLC, Newark, NJ, for Defendant Wachovia Bank, N.A.

James R. McGuire, Morrison & Foerster, San Francisco, CA, for Defendant Wachovia Bank, N.A./Wachovia Corporation, Wachovia Bank, N.A., Bank of America, N.A., Bank of America Corp./U.S. Bank, NA.

Tracy Thomas Cottingham, III, Hunton & Williams, Charlotte, NC, for Defendant Wachovia Bank, N.A./Wachovia Corporation, Wachovia Bank, N.A., Bank of America, N.A., Bank of America Corp.

Aaron Schur, Sharon D. Mayo, Arnold & Porter LLP, San Francisco, CA, Barbara Viniegra, James Randolph Liebler, Liebler Gonzalez & Portuondo PA, Miami, FL, Christopher Scott Tarbell, Laurence J. Hutt, Arnold & Porter LLP, Los Angeles, CA, for Defendant Bank of America, N.A., Bank of America Corporation, Bank of America, California.

Barry Rodney Davidson, Hunton & Williams, Miami, FL, for Plaintiff Melanie L. Garcia/Ralph Tornes, April Speers, Estella A. Lopez, John C. Stone, Charles Reed, Jr., Linda McDaniel, Andrea Luquetta/Defendant Bank of America, N.A., Bank of America Corporation, Bank of America, California/Wachovia Corporation, Wachovia Bank, N.A., Bank of America, N.A., Bank of America Corp./Citibank Inc.,

Citibank (West), FSB, Citibank, N.A./U.S. Bank, NA.

Ann Marie Mortimer, Hunton & Williams, Los Angeles, CA, for Defendant Wachovia Corporation, Wachovia Bank, N.A., Bank of America, N.A., Bank of America Corp.

Julia B. Strickland, Stroock & Stroock & Lavan, Los Angeles, CA, for Defendant Citibank Inc., Citibank (West), FSB, Citibank, N.A.

A. Stephen Hut, Jr., Michelle Ognibene, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, Alan E. Schoenfeld, Christopher R. Lipsett, David Sapir Lesser, Wilmer Cutler Pickering Hale & Dorr, New York, NY, Andrew Benjamin Grossman, Matthew D. Benedetto, Wilmer Cutler Pickering Hale & Dorr LLP, Los Angeles, CA, for Defendant J.P. Morgan Chase Bank, N.A., J.P. Morgan Chase & Co.

Rita Lin, Morrison & Foerster, San Francisco, CA, for Defendant U.S. Bank N.A., U.S. Bank Corp.

C. Marie Eckert, Cody J. Elliott, Miller Nash LLP, Portland, OR Sylvia Rivera, Morrison & Foerster, Los Angeles, CA, for Defendant U.S. Bank, NA.

Constance Melissa Ewing, David B. Darden, Eric Jon Taylor, Nancy H. Baughan, William J. Holley, II, Parker Hudson Rainer & Dobbs, Atlanta, GA, for Defendant Branch Banking and Trust Company.

Jan T. Chilton, John B. Sullivan, Mark Douglas Lonergan, Peter H. Bales, Severson & Werson, San Francisco, CA, for

Defendant Union Bank, N.A. doing business as Union Bank of California, Unionbancal Corporation.

Alan S. Kaplinsky, Martin C. Bryce, Jr., Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, Bruce W. Neckers, John M. Lichtenberg, Paul A. McCarthy, Rhoades McKee PC, Grand Rapids, MI, for Defendant Huntington Bancshares, Inc., Huntington National Bank.

Lindsey Elisa Bowen, Lynette Eaddy Smith, William N. Withrow, Jr., Troutman Sanders LLP, Atlanta, GA, for Defendant SunTrust Banks, Inc.

Mark D. Flanagan, Wilmer Cutler Pickering Hale & Dorr LLP, Palo Alto, CA, for Defendant J.P. Morgan Chase Bank.

### OMNIBUS ORDER DENYING DEFENDANTS' MOTIONS FOR RECONSIDERATION

JAMES LAWRENCE KING, District Judge.

**THIS CAUSE** comes before the Court upon Defendant JPMorgan Chase Bank N.A.'s Motion to Dismiss on Grounds of Preemption and Further Reconsideration (DE # 1484), filed May 17, 2011.[1] Defendants move for reconsideration of the Court's earlier Omnibus Order Denying Dismissal (DE # 305), in which the Court declined to dismiss Plaintiffs' claims on the basis of preemption. Now, in support of its Motion, Defendants cite a recent Eleventh Circuit decision, *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir.2011), which held that the National Banking Act, 12 U.S.C. § 21 *et seq.*

---

1. The Court also considers the fully briefed joinder motions filed by other Defendant banks. In particular, the Court considers the following joinder motions: Union Bank, N.A.'s Joinder (DE # 1509), filed May 20, 2011; Citizens Financial Group, Inc.'s Joinder (DE # 1521), filed May 24, 2011; Comerica, Inc.'s Joinder (DE # 1568), filed June 3, 2011; TD Bank, N.A.'s Joinder (DE # 1575), filed June 3, 2011; Capital One's Joinder (DE # 1587), filed on June 7, 2011; PNC Bank, N.A.'s Joinder (DE # 1591), filed June 8, 2011. Therefore, for convenience, the Court will refer to individual Plaintiffs and Defendant banks collectively.

regulation and any state law which attempts to regulate, limit, or condemn such activities is preempted. Defendants primarily rely on OCC Regulations § 7.4002 and § 7.4007 and OCC Interpretative Letter 997. All of Plaintiffs' allegations in this action rely upon state law claims. Defendants argue these allegations are preempted because they are in direct conflict with the Office of the Comptroller of the Currency's regulations and attempt to regulate the business of banking.